Nicholas P. Roxborough, Esq., (SBN 113540)
*(pro hac vice to be submitted)*
npr@rpnalaw.com
Burton E. Falk, Esq. (SBN 100644)
*(pro hac vice to be submitted)*
bef@rpnalaw.com
Vincent S. Gannuscio, Esq. (SBN 207396)
*(pro hac vice to be submitted)*
vsg@rpnalaw.com
ROXBOROUGH, POMERANCE, NYE & ADREANI, LLP
5820 Canoga Avenue, Suite 250
Woodland Hills, California 91367
Telephone: (818) 992-9999
Facsimile:  (818) 992-9991

And

Laurie R. Hager, OSB No. 012715
lhager@sussmanshank.com
SUSSMAN SHANK LLP
1000 SW Broadway, Suite 1400
Portland, OR  97205-3089
Telephone: (503) 227-1111
Facsimile: (503) 248-0130
*(Oregon Counsel)*

Attorneys for Plaintiff
Providence Health & Services

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| PROVIDENCE HEALTH & SERVICES, a Washington non-profit corporation, | Case No. |
| Plaintiff, | **COMPLAINT FOR**: |
| v. | **1. Declaratory Judgment** <br> **2. Breach of Contract; and** <br> **4.  Promissory Estoppel;** |
| CONTINENTAL CASUALTY COMPANY, an Illinois corporation; | **JURY TRIAL DEMANDED** |
| Defendant. | |

COMPLAINT

COMES NOW PLAINTIFF PROVIDENCE HEALTH & SERVICES ("PROVIDENCE" or "PLAINTIFF"), by and through the undersigned counsel, and alleges as follows:

## I.  THE PARTIES

1.  At all relevant times hereto, Plaintiff PROVIDENCE has been a non-profit corporation formed under the laws of the State of Washington, and permissibly doing business within the State of Oregon, and within the geographic boundaries of this division.  PROVIDENCE operates a network of hospitals, physicians, and other healthcare providers and facilities throughout Oregon and southwest Washington.

2.  Upon information and belief, Defendant CONTINENTAL CASUALTY COMPANY ("CONTINENTAL") is a corporation formed under the laws of the State of Illinois, with a principal place of business in Chicago, Illinois.  At all relevant times hereto, CONTINENTAL has been doing business in Oregon and within the geographic boundaries of this division, as a workers' compensation excess insurer.  Upon information and belief, CONTINENTAL is fully owned by CNA Insurance ("CNA"), the seventh largest commercial insurer in the United States.

## II.  JURISDICTION AND VENUE

3.  This court has personal jurisdiction over CONTINENTAL because CONTINENTAL engages in systematic and continuous activity, namely engaging in the business of insurance, within Oregon and within this judicial district.

4.  Jurisdiction of this court is founded on diversity of citizenship under 28 U.S.C.A. §1332.  Plaintiff PROVIDENCE is a Washington non-profit corporation with its principal place of business located in Renton, Washington.  Defendant CONTINENTAL, on information and belief, is a corporation incorporated under the laws of Illinois with its principal place of business located in Chicago, Illinois.  The amount in controversy exclusive of interest and costs exceeds $100,000.

5.  Venue in this division is proper because a substantial part of the events giving rise to the claim occurred herein.

### III. GENERAL ALLEGATIONS

6.  This is an action to recover a sum in excess of $1,500,000 in benefits that CONTINENTAL has wrongfully refused to pay PROVIDENCE under an excess workers compensation insurance policy. As alleged herein, for nearly ten years CONTINENTAL reimbursed PROVIDENCE for workers' compensation benefits paid on behalf of one its employees, specifically and substantially relating to charges for treatment and medication.

7.  Then, on March 17, 2017, solely as a cost-cutting measure to save itself money, CONTINENTAL suddenly refused to reimburse PROVIDENCE further for such expenses. Moreover, CONTINENTAL unilaterally claimed a "credit" for over $1.5 million in benefits it had previously paid PROVIDENCE, refusing to reimburse PROVIDENCE for any expenses until such credit was satisfied. CONTINENTAL'S sudden reversal was not justified by any change in fact, circumstance or law, but solely as a pretext to minimize its exposure on the Employee's claim.

8.  At all relevant times hereto, PROVIDENCE was an insured under a "Specific Excess Workers Compensation Policy" issued by CONTINENTAL, Policy No. W-128574507B, with effective dates of coverage January 1, 1996 through January 1, 2000 (hereinafter the "Policy"). A true and correct copy of the declaration pages of the Policy is attached hereto as Exhibit "A" and is incorporated herein by reference. Plaintiff does not have in its possession a complete copy of the Policy and on information and belief alleges that the complete Policy is within CONTINENTAL's possession or control.

9.  Nevertheless, the basic and material terms of the Policy provides for a $500,000 specific retention for each occurrence. This means that PROVIDENCE is responsible for the first $500,000 expended on any one workers compensation claim. For any workers compensation benefits owed on a claim in excess of $500,000, PROVIDENCE as the insured is responsible to initially pay such benefits, to be reimbursed by CONTINENTAL. The Policy does not have a dollar limit for workers compensation claims.

10. Under the Policy, PROVIDENCE was required to handle and adjust all claims, even those covered by the CONTINENTAL policy, subject to reporting and other requirements.

PROVIDENCE retained Sedgwick, a nationally-known Third Party Administrator, to administer workers compensation claims on its behalf, pay benefits, and obtain reimbursement from CONTINENTAL.

11. On information and belief, at all relevant times Sedgwick and PROVIDENCE fully complied with all reporting requirements imposed by CONTINENTAL and all requirements for reimbursement on the Employee's claim. Further, PROVIDENCE has fully complied with all conditions, covenants, and requirements under the Policy, including full payment of all premiums, and all conditions precedent to recovery in this lawsuit.

### *The Workers' Compensation Claim*

12. In September 1997, during the Policy period, an employee of PROVIDENCE who worked at the Providence St. Vincent Medical Center in Portland, Oregon (hereinafter "Employee"), suffered an on-the-job injury. The claim was accepted by PROVIDENCE and Sedgwick, the Third Party Administrator of this claim, and benefits were correctly paid under Oregon's workers compensation laws.

13. Unfortunately, medical negligence on the part of Employee's treating physicians was determined to have resulted in serious additional conditions requiring lifetime care, which continued until Employee died in March 2018. The relationship between Employee's on-the-job injury, the subsequent medical negligence, and the necessity and compensability of the treatment has always been recognized and accepted by CONTINENTAL and has never been challenged or objected to.

14. Employee's claim was timely and appropriately reported to CONTINENTAL in or about March 2007, once it became evident that it would exceed the retention and become an excess claim. An adjuster from CNA's claims department was assigned to handle and adjust the Employee's claim on behalf of CONTINENTAL.

15. Beginning prior to January 11, 2008, Employee began receiving treatment and medication from Gresham Dialysis in Gresham, Oregon ("Gresham"). Under Oregon law, the services provided by Gresham are not subject to the fee schedule applicable to workers compensation providers in

the state.  As such, absent agreement of the parties, PROVIDENCE was responsible for 100% of the fees charged by Gresham Dialysis for its services.

16. However, in August 2010, to alleviate the expense to PROVIDENCE and ultimately CONTINENTAL, an agreement was reached between Sedgwick and Gresham to reduce Gresham's fees by 19 percent.

17. At all relevant times thereafter, CONTINENTAL was aware of this agreement, and accepted the 19% reduction by Gresham. By way of example, CNA on behalf of CONTINENTAL was specifically aware on August 5, 2011 that treatment was being paid at a "negotiated discount rate" (Exhibit "B" hereto, redacted for privacy).  CNA on behalf of CONTINENTAL was consistently aware, through 2017, that Gresham was being paid for its services  "at a negotiated discount rate set by the prior examiner" (Exhibit "C" hereto, redacted for privacy).  Moreover, at all relevant times, CNA on behalf of CONTINENTAL was receiving periodic reports and payment ledgers for years, and even conducted audits on Employee's claim file, all of which showed the agreed-upon discount rate with Gresham.

18. At all relevant times following August 2010, through March 2017, CONTINENTAL and CNA reimbursed PROVIDENCE for all payments made on its behalf to Gresham.  At no point prior to March 2017 did CONTINENTAL or CNA ever withhold or threaten to withhold a reimbursement, nor did they otherwise object in any way to the negotiated discount arrangement with Gresham.  In so doing, CONTINENTAL and CNA led PROVIDENCE and Sedgwick to believe that there were no issues with the negotiated discounted fee agreement with Gresham.

19. In 2015, due in part to changes in medication and the increasing costs of medical care, the estimated cost of Employee's ongoing medical care, particularly charges by Gresham, began increasing exponentially.   This increase in medical charges was again made known to CONTINENTAL and CNA in April 2015 (Exhibit D" hereto, redacted for privacy), and with full knowledge, they continued for a time to reimburse PROVIDENCE for its payments to Gresham as required by the Policy.

COMPLAINT

20. Then, without warning, on March 17, 2017, CNA on behalf of CONTINENTAL issued a Notice of Non-Payment (Exhibit "E" hereto, redacted for privacy), refusing to reimburse PROVIDENCE for Gresham's charges, and claiming, for the first time, that it had made overpayments of $1,568,107.51. The stated reasons given by CNA for such claim were that Gresham was allegedly overcharging for medications, and that the negotiated discount rate was contrary to Oregon law.

21. CONTINENTAL and CNA are wrong on both counts. In reality, Plaintiff alleges on information and belief that these claims are simply a pretext by CONTINENTAL to avoid reimbursing the increasing costs associated with Employee's necessary medical care arising from his unquestionably on-the-job injury, and CONTINENTAL is seeking to leverage a settlement with Plaintiff.

22. CONTINENTAL and CNA have further refused to reimburse PROVIDENCE for any expenses incurred on Employee's claim, applying any reimbursements owed to the "credit" it has wrongfully claimed. As of the filing of this lawsuit, the amount expended by PROVIDENCE for which it has been owed reimbursement from CONTINENTAL and CNA is still being determined, but it is in excess of $1,500,000.

**FIRST CLAIM FOR RELIEF**

**DECLARATORY JUDGMENT**

23. PROVIDENCE restates and incorporates herein by reference the allegations of paragraphs 1 through 22 as though fully set forth herein.

24. This is an action for declaratory judgment pursuant to ORS 28.010 *et seq.* and 28 USC §2201 *et seq.*

25. Under the Policy and Oregon law, PROVIDENCE is entitled to reimbursement from CONTINENTAL of all amounts paid to Gresham for the treatment rendered to Employee. As alleged herein, since August 2010, PROVIDENCE has been paying Gresham at a discounted rate pursuant to a negotiated agreement that is fully authorized under Oregon law, and for medications that were deemed reasonable and medically necessary to treat Employee's serious condition.

26. Further, as Gresham is not subject to Oregon's workers compensation fee schedule, its discounted rate is not subject to any limitations on discounts imposed by Oregon law applicable to any providers subject to the fee schedule. Moreover, CONTINENTAL has no legal right to withhold reimbursement for payments made by PROVIDENCE based on the negotiated discount rate, and is estopped from doing so based on its having accepted and paid according to that discounted rate from the time it was negotiated until March 2017.

27. An actual controversy exists because CONTINENTAL has refused and is continuing to refuse to reimburse PROVIDENCE for expenses relating to the Employee's claim, specifically based on erroneous claims of overpayments for medications and that the discounted rate agreement is unlawful.

28. PROVIDENCE seeks and is entitled to a judicial declaration that CONTINENTAL's justifications for refusing payments are pretextual, without a reasonable legal basis, and violate its obligations under the Policy, and that it has no right to either assert a "credit" for "overpayments" or otherwise refuse to reimburse PROVIDENCE for expenses relating to Employee's claim.

## SECOND CLAIM FOR RELIEF

## BREACH OF CONTRACT

29. PROVIDENCE realleges and incorporates herein by reference the allegations of paragraphs 1 through 22 as though fully set forth herein.

30. PROVIDENCE entered into a written contract with CONTINENTAL wherein CONTINENTAL provided excess workers compensation insurance. As part of that contract, CONTINENTAL agreed to reimburse Plaintiff for all expenses exceeding $500,000 on any workers compensation claim. Plaintiff has paid all premiums due under the Policy and complied with all conditions required under the Policy, including due and timely notice of the Employee's claim.

31. CONTINENTAL has breached the contract of insurance by failing and refusing to reimburse PROVIDENCE for its losses relative to the Employee's claim. Specifically, Defendant has breached the contract by unreasonably and erroneously asserting the pretexts set forth in its

attached March 17, 2017 Notice of Non-Payment, its assertion of a "credit" for "overpayments" on amounts already reimbursed, and its refusal to make further reimbursement payments.

32.    PROVIDENCE has been damaged by CONTINENTAL's breach of contract in that it has not been reimbursed for losses, including claim and indemnity expenses, incurred in the defense and settlement of the Employee's claim, in an amount exceeding $1,500,000.    Further, PROVIDENCE has been forced to unnecessarily incur additional fees, costs, and expenses by hiring the undersigned counsel to pursue benefits due it under the Policy.    PROVIDENCE is therefore entitled to a recovery of attorneys' fees pursuant to ORS 742.061.

### THIRD CLAIM FOR RELIEF

### PROMISSORY ESTOPPEL

33.    PROVIDENCE realleges and incorporates herein by reference the allegations of paragraphs 1 through 22 as though fully set forth herein.

34.    By participating in the defense and adjustment of the Employee's claim, by reimbursing PROVIDENCE for nearly seven years for payments to Gresham under the negotiated rate agreement, and by never in those nearly seven years raising any objection or concern about the agreement, CONTINENTAL made a promise and commitment that it would continue to reimburse  PROVIDENCE for claims and expenses relating to the Employee's claim that was clear and unambiguous in its terms.  PROVIDENCE's conduct in this matter is such that any reasonable person could foresee that such conduct would induce reliance on the continued promise to make reimbursements.

35.    PROVIDENCE, as the promisee and beneficiary of the promise, reasonably and for years relied on CONTINENTAL's promises and substantially changed its position by paying claims expenses relating to Gresham, and continued to pay Gresham pursuant to the negotiated discount rate, and for the medications that CONTINENTAL had previously been paying for. Such reliance was both reasonable and foreseeable.

36.    CONTINENTAL's breach of its promises constitutes a gross injustice which can only be avoided by enforcement of the above promises.

37. Because of its reliance on these promises, PROVIDENCE has been damaged in that it incurred expenses to Gresham with the expectation that it would be reimbursed by CONTINENTAL. Such losses are in excess of $1,500,000.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff PROVIDENCE prays for judgment against Defendant CONTINENTAL as follows:

1. Entry of judgment in favor of PROVIDENCE and against CONTINENTAL on all claims for relief;

2. A declaratory judgment that PROVIDENCE is entitled to the reimbursements under the Policy described this complaint, and that CONTINENTAL has no legal or factual basis to refuse reimbursements or assert a "credit" for "overpayments;"

3. For damages in the amount according to proof at trial but at least $1,500,000;

4. For prejudgment interest at the statutory rate from the time that reimbursement payments came due;

5. For PROVIDENCE'S attorney's fees pursuant to ORS 742.061, plus its costs and disbursements incurred herein;

6. For any and all other legal and equitable relief as may be available under law the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all issues so triable.

Respectfully submitted,  September 23, 2020

ROXBOROUGH, POMERANCE, NYE & ADREANI, LLP
Nicholas P. Roxborough, Esq., (SBN 113540)
 *(pro hac vice to be submitted)*
Burton E. Falk, Esq. (SBN 100644)
 *(pro hac vice to be submitted)*
Vincent S. Gannuscio, Esq. (SBN 207396)
 *(pro hac vice to be submitted)*
 Telephone: (818) 992-9999

And

SUSSMAN SHANK LLP

By  _s/ Laurie R. Hager_____
   Laurie R. Hager, OSB No. 012715
   (503) 227-1111

               Attorneys for Plaintiff
               Providence Health & Services

# EXHIBIT A

# SPECIFIC EXCESS WORKERS COMPENSATION POLICY

## CONTINENTAL CASUALTY COMPANY
### one of the CNA Insurance Companies
(A Stock Company, herein called the "Company")
CNA Plaza, Chicago, Illinois 60685

## WEXFORD UNDERWRITING MANAGERS, INC.
101 California Street, Suite 2800, San Francisco, CA 94111

POLICY NUMBER:  W - 128574507B

# DECLARATIONS

ITEM 1 - Name and Address of Insured:    Sisters of Providence, Sacred Heart Province, et al.
P.O. Box 11038
Seattle, Washington 98111-9038 - See Endorsement #1 *$13*½ [handwritten]

ITEM 2 - Effective Date: January 1, 1996        Expiration Date: January 1, 1998 *2000* [handwritten]
12:01 A.M., standard time at the address of the Insured as stated herein.        *(See end't #16)* [handwritten]
Cancellation Notice: 90 Days

ITEM 3 - Coverage under this Policy applies to the Workers Compensation Act of each of the following states:
Washington, Alaska, California, Oregon

ITEM 4 - Company's Specific Limit of Indemnity Each Occurrence
(a) For Workers Compensation:                    Statutory
(b) For Employers Liability:  See Endorsement #3        $2,000,000

ITEM 5 - Insured's Specific Retention Each Occurrence:        $500,000

ITEM 6 - Business Operations of Insured

| CLASSIFICATION OF OPERATIONS | CODE NO. | ESTIMATED ANNUAL REMUNERATION | RATE PER $100 REMUNERATION | ESTIMATED STANDARD PREMIUM |
|---|---|---|---|---|
| All Operations | — | $410,250,973 *589,055,000 (see end't #16)* [handwritten] | | *$9,000,000 (see end't ...)* [handwritten] |

Total Estimated Manual Premium:    (Annually)    $17,561,326

ITEM 7 - Policy Premium: $486,960  (For the Term)  *$959,760 (End't #16)* [handwritten]    Advance Premium for this Policy:        $228,480
adjustable at .0886 per $100 of Payroll based on $410,250,973 (Annually)  *$591,055,000 end't #16* [handwritten]
adjustable at .0038 per Manhour based on 18,413,101 (Annually)  *17,000,000 (See end't #16)* [handwritten]

ITEM 8 - Minimum Premium for this Policy: $194,208 (Annually)  *$407,878 (see end't #16)* [handwritten]

The Declarations shall not be binding on the Company unless countersigned by a duly authorized representative of the Company.

Dated at _San Francisco, California_ this _31st_ day of _January_ 1996.

By _[signature] Dane C. Weir_
(Authorized Representative)

Producer's Name:    Johnson & Higgins of Washington, Inc.        Producer's Code: WP - 0083

**CNA**
For All the Commitments You Make®

This Schedule forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.

INSURED        SISTERS OF PROVIDENCE, SACRED HEART PROVINCE, ET AL.

Policy No.     W - 128574507B                    Schedule Effective    JANUARY 1, 1996
                                                                        (12:01 A.M.)

by CONTINENTAL CASUALTY COMPANY, one of the CNA Insurance Companies, Chicago, Illinois

## SCHEDULE OF ENDORSEMENTS

| Endorsement No. | Endorsement Title |
| --- | --- |
| G-20307-A | NAMED INSURED ENDORSEMENT |
| G-20279-A | ADVANCE PREMIUM INSTALLMENT ENDORSEMENT |
| G-20292-A | EMPLOYERS LIABILITY LIMITATION ENDORSEMENT |
| G-20328-A | SPECIFIC OCCUPATIONAL DISEASE COVERAGE ENDORSEMENT |
| G-20328-A | CASH FLOW PROTECTION ENDORSEMENT |
| G-20317-A | VOLUNTARY COMPENSATION ENDORSEMENT |
| G-20285-A | LONGSHOREMEN'S AND HARBOR WORKERS COMPENSATION ACT ENDORSEMENT |
| G-20328-A | OTHER STATES COVERAGE ENDORSEMENT |
| G-20328-A | ANNUAL RATING AND REVIEW ENDORSEMENT |
| G-20344-A | ALASKA AMENDATORY ENDORSEMENT |
| G-20364-A | OREGON AMENDATORY ENDORSEMENT |
| G-20372-A | WASHINGTON AMENDATORY ENDORSEMENT |

Endorsement No. _____1_____

This Endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this Endorsement is issued subsequent to preparation of the Policy).

INSURED_____    SISTERS OF PROVIDENCE, SACRED HEART PROVINCE, ET AL._____

Policy No._____W-128574507B_____                    Endorsement Effective    JANUARY 1, 1996_____
                                                                                    (12:01 A.M.)

                                        Countersigned_____
                                                                          (Authorized Representative)

by CONTINENTAL CASUALTY COMPANY, one of the CNA Insurance Companies, Chicago, Illinois
_____

NAMED INSURED ENDORSEMENT

This Policy is changed to provide:

ITEM 1 of the Declarations, Name and Address of Insured, shall be amended to include:

> Sisters of Providence, Sacred Heart Province
> Sisters of Providence in Washington
> John Gabriel Ryan Corporation
> Providence Health Plans in Washington
> Providence General Medical Center
> Hospice and Home Care of Snohomish County
> Sisters of Providence Home Health Supply, Inc.
> Medalia HealthCare LLC
> Sisters of Providence in Oregon
> Sisters of Providence in California
> Sisters of Providence in Oregon Management Corporation
> Hospice of Seattle
> St. Luke Association
> Sisters of Providence Good Health Plan of Oregon, Inc.
> Sisters of Providence Good Health Plan of Washington
> Providence Health Care
> Sisters of Providence - Pariseau Association
> Providence Housing Association
> The Gamelin Association
> The Gamelin - Oregon Association
> The Gamelin - California Association
> Lundberg Association

> Community Boards, controlled and uncontrolled foundations, auxiliaries and guilds, any subsidiary corporations of any of the above, thereof, of any tier, as now, in the past, or hereafter constituted, and any other legal entities in which the named insured has more than fifty percent ownership interest or in which the named insured exercises management or financial control.

*replaced by end't #23*

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WCNA-41
G-20307-A (9/93)

Endorsement No. _____2_____

This Endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this Endorsement is issued subsequent to preparation of the Policy).

INSURED _____SISTERS OF PROVIDENCE, SACRED HEART PROVINCE, ET AL._____

Policy No. _____W - 128574507B_____          Endorsement Effective _____JANUARY 1, 1996_____
                                                                                   (12:01 A.M.)

                              Countersigned _____
                                                                (Authorized Representative)

by CONTINENTAL CASUALTY COMPANY, one of the CNA Insurance Companies, Chicago, Illinois

---

### ADVANCE PREMIUM INSTALLMENT ENDORSEMENT

This Policy is changed to provide:

ITEM 7 of the Declarations, Advance Premium for this Policy, will be payable as follows for the period January 1, 1996 to January 1, 1998:

| DUE DATE | AMOUNT PAYABLE |
|---|---|
| January 1, 1996 | $228,480.00 |
| January 1, 1997 | $228,480.00 |

*1/1/98 Replaced by #17*

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WCNA-01
G-20279-A (9/93)

Endorsement No. _____3_____

This Endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this Endorsement is issued subsequent to preparation of the Policy).

INSURED _____SISTERS OF PROVIDENCE, SACRED HEART PROVINCE, ET AL._____

Policy No. _____W - 128574507B_____          Endorsement Effective _____JANUARY 1, 1996_____
                                                                    (12:01 A.M.)

                                      Countersigned _____
                                                                (Authorized Representative)

by CONTINENTAL CASUALTY COMPANY, one of the CNA Insurance Companies, Chicago, Illinois

_____

EMPLOYERS LIABILITY LIMITATION ENDORSEMENT

This Policy is changed to provide:

Notwithstanding anything in the Policy to the contrary, when this Endorsement is used, the Company's liability under that portion of PART 1 of the Policy, COVERAGE, which is entitled, "Employers Liability Indemnity Coverage", and ITEM 4(b) of the Declarations, Company's Specific Limit of Indemnity Each Occurrence for Employers Liability, shall be subject to the following aggregate and each occurrence limitations.

   The Company's maximum limit of indemnity thereunder for loss arising out of any one occurrence shall not exceed:

   $2,000,000 Each Occurrence, in excess of the Insured's Specific Retention set forth in ITEM 5 of the Declarations, applicable to each occurrence; and

   The Company's maximum limit of indemnity for all occurrences taking place during the Policy Period shall not exceed $6,000,000.

*deleted & replaced by endt # 15*

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WCNA-17
G-20292-A (9/93)

Endorsement No. _____4_____

This Endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this Endorsement is issued subsequent to preparation of the Policy).

INSURED_____    SISTERS OF PROVIDENCE, SACRED HEART PROVINCE ET AL._____

Policy No. _____    W-128574507B                        Endorsement Effective____JANUARY 1, 1996____
                                                                                    (12:01 A.M.)

                                    Countersigned_____
                                                                (Authorized Representative)

by CONTINENTAL CASUALTY COMPANY, one of the CNA Insurance Companies, Chicago, Illinois

_____

### SPECIFIC OCCUPATIONAL DISEASE COVERAGE ENDORSEMENT

This Policy is changed to provide:

PART 4, DEFINITIONS, (g), "occupational disease" is changed to read as follows:

"occupational disease" shall include (1) death resulting therefrom, (2) and cumulative injuries but does not include bodily injury arising out of the "same communicable disease;"

PART 4, DEFINITIONS, (h), "occurrence" is changed to read as follows:

"occurrence" as applied to bodily injury, shall mean accident. Occupational disease sustained by each employee shall be deemed to be a separate occurrence for each injured employee and occurrence shall be deemed to take place on the date the occupational disease is first manifested. Same communicable disease sustained by each employee during the term of this Policy shall be one occurrence for all employees diagnosed within one time frame which is deemed to begin when one employee with the same communicable disease is first diagnosed and continue for a period of twenty-four months.

PART 4, DEFINITIONS, (n), "same communicable disease," is added to the policy:

"same communicable disease" shall mean all diseases caused by an infectious organism (or organisms) which is transmissible from one source to another, directly or indirectly.

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WCNA-84
G-20328-A (9/93)

Endorsement No.    5

This Endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this Endorsement is issued subsequent to preparation of the Policy).

INSURED    SISTERS OF PROVIDENCE, SACRED HEART PROVINCE, ET AL.

Policy No.    W-128574507B                          Endorsement Effective    JANUARY 1, 1996
                                                                              (12:01 A.M.)

                                        Countersigned
                                                                              (Authorized Representative)

by CONTINENTAL CASUALTY COMPANY, one of the CNA Insurance Companies, Chicago, Illinois

## CASH FLOW PROTECTION ENDORSEMENT

In consideration of the premium charged, this Policy is changed to provide:

Subject to the Company's Specific Limit of Indemnity Each Occurrence specified in ITEM 4 (a) of the Declarations, The Company further agrees to indemnify the Insured for loss in excess of $95,000 Each Occurrence for loss incurred during each payment year as respects the Workers Compensation Act benefits of any state listed in ITEM 3 of the Declarations.

The term "incurred during each payment year" shall mean all payments for periodic indemnity benefits which are due and all payments for medical benefits including funeral expenses, medical, and voluntary rehabilitation expenses which are incurred during each consecutive (12) month period starting at the date of an occurrence and applying separately for each occurrence.

It is further understood that this cash flow protection does not apply to any lump sum settlements or one time payment in lieu of periodic indemnity payments to employees or their dependents.

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WCNA-89
G-20374-A (11/95)

Endorsement No. _____6_____

This Endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this Endorsement is issued subsequent to preparation of the Policy).

INSURED       SISTERS OF PROVIDENCE, SACRED HEART PROVINCE, ET AL.

Policy No. _____W - 128574507B_____          Endorsement Effective _____JANUARY 1, 1996_____
                                                                        (12:01 A.M.)

Countersigned _____
                                          (Authorized Representative)

by CONTINENTAL CASUALTY COMPANY, one of the CNA Insurance Companies, Chicago, Illinois

## VOLUNTARY COMPENSATION ENDORSEMENT

This Policy is changed to provide:

A.    How This Insurance Applies

This insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1.  The bodily injury must be sustained by an employee included in the group of employees described in the Schedule.

2.  The bodily injury must occur in the course of employment necessary or incidental to work in a state listed in the Schedule.

3.  The bodily injury must occur in the United States of America, its territories or possessions, or Canada, and may occur elsewhere if the employee is a United States or Canadian citizen temporarily away from those places.

4.  Bodily injury by accident must occur during the policy period.

5.  Bodily injury by disease must be caused or aggravated by the conditions of employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

B.    The Company Will Indemnify

The Company will indemnify the Insured for an amount equal to the benefits in excess of the Retention that would be required if the Insured and the Insured's employees described in the Schedule were subject to the Workers Compensation law shown in the Schedule. The Company will indemnify the Insured for those amounts paid in excess of the Retention to the claimants who would be entitled to them under the law.

Page 1 of 3

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WCNA-70
G-20317-A (9/93)

Endorsement No. _____ 6 Cont. _____

This Endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this Endorsement is issued subsequent to preparation of the Policy).

INSURED    SISTERS OF PROVIDENCE, SACRED HEART PROVINCE, ET AL. _____

Policy No. ___ W - 128574507B _____            Endorsement Effective _____ JANUARY 1, 1996 _____
                                                                                    (12:01 A.M.)

Countersigned _____
                                             (Authorized Representative)

by CONTINENTAL CASUALTY COMPANY, one of the CNA Insurance Companies, Chicago, Illinois
_____

C.    Exclusions

This insurance does not cover:

1.  any obligation imposed by a Workers Compensation or occupational disease law, or any similar law.

2.  bodily injury intentionally caused or aggravated by the Insured.

D.    Before The Company Indemnifies

Before the Company indemnifies the Insured for benefits in excess of the Retention to the claimants entitled to them, the claimants must:

1.  Release the Insured and the Company, in writing, of all responsibility for the injury or death.

2.  Transfer to the Company their right to recover from others who may be responsible for the injury or death.

3.  Cooperate with the Company and do everything necessary to enable the Company to enforce the right to recover from others.

If the claimants entitled to the benefits in excess of the Retention of this insurance fail to do those things, the Company's duty to indemnify ends at once. If they claim damages from the Insured or from the Company for the injury or death, the Company's duty to indemnify ends at once.

E.    Recovery From Others

If the Company makes a recovery from others, the Company will keep an amount equal to the Company's expenses of recovery and the benefits the Company indemnified. The Company will indemnify the balance to the Insured for the claimant entitled to it. If the claimant entitled to the benefits in excess of the Retention makes a recovery from others, the claimant must reimburse the Company for the benefits the Company indemnified.

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WCNA-70
G-20317-A (9/93)

Endorsement No. _____6 Cont._____

This Endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this Endorsement is issued subsequent to preparation of the Policy).

INSURED _____SISTERS OF PROVIDENCE, SACRED HEART PROVINCE, ET AL._____

Policy No. _____W - 128574507B_____     Endorsement Effective _____JANUARY 1, 1996_____
                                                                    (12:01 A.M.)

Countersigned _____
                              (Authorized Representative)

by CONTINENTAL CASUALTY COMPANY, one of the CNA Insurance Companies, Chicago, Illinois

F.   Employers Liability Insurance

PART 1 of the Policy, COVERAGE, "Employers Liability Indemnity Coverage", applies to bodily injury covered by this Endorsement as though the State of employment shown in the Schedule were shown in ITEM 3 of the Declarations.

This endorsement is subject to PART 1 of the Policy, COVERAGE, as it applies to "Self Insured Indemnity Coverage".

Schedule

| Employees | State of Employment | Designated Workers Compensation Law |
|---|---|---|
| All Employees not subject to a workers compensation law | Any state shown as covered in ITEM 3 of the Declarations | Workers compensation law or laws of the state of operation |

Page 3 of 3

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WCNA-70
G-20317-A (9/93)

Endorsement No. _____7_____

This Endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this Endorsement is issued subsequent to preparation of the Policy).

INSURED ____ SISTERS OF PROVIDENCE, SACRED HEART PROVINCE, ET AL. _____

Policy No. ____ W - 128574507B _____          Endorsement Effective _____ JANUARY 1, 1996 _____
                                                                                          (12:01 A.M.)

Countersigned _____
                                               (Authorized Representative)

by CONTINENTAL CASUALTY COMPANY, one of the CNA Insurance Companies, Chicago, Illinois

_____

LONGSHOREMEN'S AND HARBOR WORKERS COMPENSATION ACT ENDORSEMENT

It is hereby understood and agreed:

All references to "Workers Compensation Act" in this Policy shall include employees engaged in incidental operations in the states of Washington, Alaska, California and Oregon subject to liability under the United States Longshoremen's and Harbor Workers Compensation Act (33 U.S.C. Sections 901-950) and any amendment to that Act that is in effect during the period this Policy is in force.

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WCNA-10
G-20285-A (9/93)

Endorsement No.        8

This Endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.  (The following information is required only when this Endorsement is issued subsequent to preparation of the Policy).

INSURED            SISTERS OF PROVIDENCE, SACRED HEART PROVINCE, ET AL.

Policy No.            W-128574507B                        Endorsement Effective        JANUARY 1, 1996
                                                                                      (12:01 A.M.)

                                          Countersigned
                                                                                      (Authorized Representative)

by CONTINENTAL CASUALTY COMPANY, one of the CNA Insurance Companies, Chicago, Illinois

## OTHER STATES COVERAGE ENDORSEMENT

This Policy is changed to provide:

PART 1, COVERAGE, subparagraph 2 of the section of the Policy which is entitled, SELF-INSURED INDEMNITY COVERAGE is deleted, and replaced with the following language:

(2)    Such loss would be compensable under the Workers Compensation Act of any state for employees who are normally employed in a state listed in ITEM 3 of the Declarations, but only if such employees' activity in such other state is incidental to their regular employment in a state named in ITEM 3 of the Declarations, and only if the work performed by such employees in such other state was not performed at a permanent or fixed location or worksite of the Insured in such other state.

Notwithstanding anything in the Policy to the contrary, when this endorsement is used, PART 7(d)(4) of the Policy, ADMINISTRATION AND REPORTING OF CLAIMS, is amended to read in its entirety as follows:

(4)    permanent total disability, as defined in the Workers Compensation Act of the state of injury if the injury would be compensable under that state's law, and if not, then of the states named in ITEM 3 of the Declarations.

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WCNA-84
G-20328-A (6/94)

Endorsement No.      9

This Endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this Endorsement is issued subsequent to preparation of the Policy).

INSURED      SISTERS OF PROVIDENCE, SACRED HEART PROVINCE, ET AL.

Policy No.   W-128574507B                    Endorsement Effective      JANUARY 1, 1996
                                                                                                 (12:01 A.M.)

                                            Countersigned_____
                                                                          (Authorized Representative)

by CONTINENTAL CASUALTY COMPANY, one of the CNA Insurance Companies, Chicago, Illinois

<u>ANNUAL RATING AND REVIEW ENDORSEMENT</u>

This Policy is changed to provide:

PART 5. of the Policy, POLICY PERIODS, shall be replaced with the following:

The term "Policy Period" shall mean the period of time commencing at 12:01 AM on the effective date of this Policy, and ending at 12:01 AM on the expiration date, as specified in the Declarations.

The term "Fractional Policy Period" applies only in case this Policy is cancelled effective at a date other than the Anniversary Date, and shall mean that period of time between 12:01 AM on the most recent Anniversary Date and 12:01 AM on the cancellation date of this Policy.

The term "Anniversary Date" shall mean 12:01 AM on the effective date of this Policy and each subsequent Annual Period up to and including the expiration date as specified in the Declarations.

The term "Annual Period" shall mean the 12 consecutive months between anniversary dates.  On the Declarations page ITEM 6, ITEM 7 and ITEM 8 apply to each Annual Period.

PART 6. of the Policy, POLICY PREMIUM, shall be replaced with the following:

As of the effective date stated in ITEM 2 of the Declarations and each subsequent Anniversary Date, the Insured shall pay to the Company the Advance Premium specified in ITEM 7 of the Declarations, and such Advance Premium shall be held for the Insured's account and shall be allowed as a credit against earned Policy Premium for the Annual Period.

Within 45 days after each Annual Period, the Insured shall render to Wexford Underwriting Managers, Inc., a payroll report upon a form satisfactory to Wexford Underwriting Managers, Inc. showing by classification the amount of remuneration earned by employees during the Annual Period, plus computations of the standard premium and the earned Policy Premium for the Annual Period (the latter obtained by adjusting Policy Premium as specified in ITEM 7 of the Declarations).

The Insured shall pay to the Company the excess, if any, of the earned Policy Premium over the Advance Premium paid at the beginning of the Annual Period.  If such Advance Premium exceeds such earned Policy Premium, the Company shall return to the Insured the amount of such excess, subject to the Minimum Premium applicable to the Annual Period, as specified in ITEM 8 of the Declarations.

In no event, however, shall the Policy Premium due the Company, with respect to each Annual Period be less than the applicable Minimum Premium specified in ITEM 8 of the Declarations.  The Policy Premium due the Company with respect to the Fractional Policy Period resulting in case the Policy is cancelled effective at a date other than the Anniversary Date shall be set forth in PART 15 of the Policy, CANCELLATION.

Page 1 of 2

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WCNA-84
G-20328-A (9/93)

Endorsement No.    9 cont.

This Endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this Endorsement is issued subsequent to preparation of the Policy).

INSURED    SISTERS OF PROVIDENCE, SACRED HEART PROVINCE, ET AL.

Policy No.    W-128574507B                                     Endorsement Effective    JANUARY 1, 1996
                                                                                        (12:01 A.M.)

                                             Countersigned
                                                                                        (Authorized Representative)

by CONTINENTAL CASUALTY COMPANY, one of the CNA Insurance Companies, Chicago, Illinois

It is further agreed that prior to each Anniversary Date, the Insured will submit a completed renewal application for the next Annual Period. Upon receipt of the application, the Company reserves the right to review and modify the rates and Insured's Specific Retention Each Occurrence as specified in ITEM 7 and ITEM 5 of the Declarations if the Insured's risk characteristics change significantly. Risk characteristics include but are not limited to business operations, the Insured's service organization, payroll classifications, loss experience, or Workers Compensation laws or regulations in the states named in ITEM 3 of the Declarations.

Page 2 of 2

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WCNA-84
G-20328-A (9/93)

Endorsement No. _____10_____

This Endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this Endorsement is issued subsequent to preparation of the Policy).

INSURED        SISTERS OF PROVIDENCE, SACRED HEART PROVINCE, ET AL.

Policy No.      W - 128574507B                              Endorsement Effective          JANUARY 1, 1996
                                                                                              (12:01 A.M.)

                                        Countersigned _____
                                                                    (Authorized Representative)

by CONTINENTAL CASUALTY COMPANY, one of the CNA Insurance Companies, Chicago, Illinois

ALASKA AMENDATORY ENDORSEMENT

This Policy is changed to provide:

If this Policy is cancelled by the Company, 60 days written notice of cancellation (20 days if cancellation is for nonpayment of premium) will be given to the Insured and to the:

                        Alaska Department of Labor
                        Workers' Compensation Division
                        P.O. Box 25512
                        Juneau, Alaska  99802-5512

If this Policy is cancelled at the Insured's request, a short rate penalty, not to exceed 7.5% of unearned premium, may be applied.

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WCNA-185
G-20344-A (12/93)

Endorsement No. _____11_____

This Endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this Endorsement is issued subsequent to preparation of the Policy).

INSURED    SISTERS OF PROVIDENCE, SACRED HEART PROVINCE, ET AL.

Policy No.    W - 128574507B                 Endorsement Effective    JANUARY 1, 1996
                                                                         (12:01 A.M.)

Countersigned _____
                              (Authorized Representative)

by CONTINENTAL CASUALTY COMPANY, one of the CNA Insurance Companies, Chicago, Illinois

OREGON AMENDATORY ENDORSEMENT

This Policy is changed to provide:

A)    For the period January 1, 1996 to January 1, 1998, ITEM 1 of the Declarations, Name and Address of Insured includes the Oregon Workers Compensation Department, but only with respect to benefits required of the Insured under the Oregon Workers Compensation Laws (ORS 656.614) and (ORS.443) subject to the Retentions and Limit of Liability on the Declarations.

B)    The Insurance provided by PART 1 of the Policy, COVERAGE, Employers Liability Indemnity Coverage does not apply to injury proximately caused by failure of the Insured to comply with a notice posted pursuant to ORS 654.082 as now or hereafter amended.

C)    PART 15 of the Policy, CANCELLATION, is amended to include:

    (1)    You may cancel this Policy. You must mail or deliver advance written notice to us, stating when the cancellation is to take effect. Your notice must be given at least 30 days before the cancellation is to take effect unless you provide for other insurance or are becoming a self-insured employer. If you provide for other insurance or self-insurance, your cancellation of coverage will take effect upon the effective date of that insurance.

    (2)    We may cancel this Policy. We will mail to you and to the Director of the Department of Insurance and Finance advance written notice stating when the cancellation is to take effect. If we cancel, we will mail the notice of cancellation at least 30 days before the cancellation is to take effect.

    (3)    Mailing notice to you at your last known mailing address will be sufficient to prove notice.

    (4)    The Policy period will end on the day and hour stated in the cancellation notice.

*1/1/98 Replaced by #18*

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WCNA-125
G-20364-A (9/93)

Endorsement No. _____12_____

This Endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this Endorsement is issued subsequent to preparation of the Policy).

INSURED _____ SISTERS OF PROVIDENCE, SACRED HEART PROVINCE, ET AL. _____

Policy No. _____ W - 128574507B _____          Endorsement Effective _____ JANUARY 1, 1996 _____
                                                                                                    (12:01 A.M.)

Countersigned _____
                                                            (Authorized Representative)

by CONTINENTAL CASUALTY COMPANY, one of the CNA Insurance Companies, Chicago, Illinois

_____

WASHINGTON AMENDATORY ENDORSEMENT

This Policy is changed to provide:

A)      This Policy excludes payment of any costs, benefits, or compensations which the Insured may be obligated to pay under Title 51 RCW in excess of 80% of any such liabilities as required by RCW 51.14.020 (5).

B)      The Company will not participate in the administration of the responsibilities of the Insured under Title 51 RCW.

C)      It is agreed that with regards to coverage provided in the state of Washington the term "remuneration" shall be replaced by the term "manhours" and the term "remuneration paid" shall be replaced by the term "manhours worked" whenever used in this Policy. All record keeping relative to manhours shall be consistent with the rules of the state of Washington.

D)      PART 15, CANCELLATION, is amended to include:

(1)      The Insured may cancel this Policy by mailing to the Company advance written notice of cancellation.

(2)      The Company may cancel this Policy by mailing to the Insured and to the Insured's representative written notice of cancellation, including such actual reason for cancellation. At least forty five (45) days written notice will be given (10 days for nonpayment) prior to the effective date of such cancellation.

(3)      NONRENEWAL - The Company may elect not to renew this Policy. At least forty five (45) days written notice will be mailed to the Insured and to the Insured's representative, including such actual reason(s) for nonrenewal.

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WCNA-131
G-20372-A (9/93)

Endorsement No. _____13_____

This Endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this Endorsement is issued subsequent to preparation of the Policy).

INSURED        SISTERS OF PROVIDENCE, SACRED HEART PROVINCE, ET AL.

Policy No.        W - 128574507B                    Endorsement Effective        MAY 1, 1996
                                                                                    (12:01 A.M.)

                                Countersigned
                                                                                    (Authorized Representative)


by CONTINENTAL CASUALTY COMPANY, one of the CNA Insurance Companies, Chicago, Illinois


ADDITIONAL NAMED INSURED ENDORSEMENT


This Policy is changed to provide:

In consideration of the premium charged, it is hereby agreed that ITEM 1 of the Declarations, Name and Address of Insured, shall be amended to include:


Holy Cross Surgery Center


This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WCNA-71
G-20318-A (9/93)

Endorsement No. _____14_____

This Endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this Endorsement is issued subsequent to preparation of the Policy).

INSURED _____SISTERS OF PROVIDENCE, SACRED HEART PROVINCE, ET AL._____

Policy No. _____W - 128574507B_____         Endorsement Effective _____JUNE 27, 1996_____
                                                                                            (12:01 A.M.)

                                        Countersigned _____
                                                                    (Authorized Representative)

by CONTINENTAL CASUALTY COMPANY, one of the CNA Insurance Companies, Chicago, Illinois
_____

ADDITIONAL NAMED INSURED ENDORSEMENT

This Policy is changed to provide:

In consideration of the premium charged, it is hereby agreed that ITEM 1 of the Declarations, Name and Address of Insured, shall be amended to include:

Greater Valley Medical Building Partnership, L.P.

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WCNA-71
G-20318-A (9/93)

Endorsement No.     15

This Endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.  (The following information is required only when this Endorsement is issued subsequent to preparation of the Policy).

INSURED          SISTERS OF PROVIDENCE, SACRED HEART PROVICNE, ET AL.

Policy No.          W-128574507B                          Endorsement Effective      JANUARY 1, 1996
                                                                                              (12:01 A.M.)

                                                    Countersigned
                                                                                              (Authorized Representative)

by CONTINENTAL CASUALTY COMPANY, one of the CNA Insurance Companies, Chicago, Illinois

Endorsement No. 3 is deleted in its entirety and replaced with the following:

## EMPLOYERS LIABILITY LIMITATION ENDORSEMENT

This Policy is changed to provide:

Notwithstanding anything in the Policy to the contrary, when this Endorsement is used, the Company's liability under that portion of PART 1 of the Policy, COVERAGE, which is entitled, "Employers Liability Indemnity Coverage", and ITEM 4(b) of the Declarations, Company's Specific Limit of Indemnity Each Occurrence for Employers Liability, shall be subject to the following aggregate and each occurrence limitations.

   The Company's maximum limit of indemnity for each Annual Period for loss arising out of any one occurrence shall not exceed:

   $2,000,000 Each Occurrence, in excess of the Insured's Specific Retention set forth in ITEM 5 of the Declarations, applicable to each occurrence; and

   The Company's maximum limit of indemnity for all occurrences taking place during each Annual Period shall not exceed $6,000,000.

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WCNA-84
G-20328-A (9/93)

# EXHIBIT B



Event/Clmnt/Claim  Date      Tp Sb Examiner

████████████████████  08/05/2011 AP   CHRISTYF
CDA                   Goal: Lifetime ██████ and potential for
declared              offer.  Strategy: Claimant has been
██████                PTD and has opted for ██████ versus a
a                     ██████████. Continue to pay for ██████ at
examiner.             negotiated discount rate set by prior
                      ████████████████████████████████
██████████            ██████████████████████████
██████████            █████████████████████████████
██                    █████████████████████████████
██████                                      Continue to
██                    update Excess. ███████████
                      █████████████████.

                      [Time Note Created : 1:07 PM ]
-----------------------------------------------------------------

# EXHIBIT C



```
----------------------------------------------------------------------
------
██████████████████  02/07/2017 AP   LMILLICA
                         Goal: Lifetime ████████  ████████████
████████████
```

declared

bi

██

at a

monthly.

████████

██

█

request

Current Status: ███████ has been

Permanently and Totally Disabled. He gets

weekly███████ . ████████████████████

█████████████████ .

Strategy:  We continue to pay for ███████

negotiated discount rate.

Continue to review bills for payment

Pay PTD benfits monthly. █████████████

██████

███████████████████████████████████

████████████████████████████████████

███████████████

Continue to update excess carrier and

reimbursement from the State Retro Reserve.
[Time Note Created : 3:25 PM ]
----------------------------------------------------------------------



# EXHIBIT D



---------------------------------------------------------------------------
------

 04/08/2015 SR    CASHAW
                     Pending Reserve Review:   Approve

                     Last increase done: 8-31-10

                     Pending Reserve: $9,522,880.93
                     Current Reserve: $5,382,822.18

Net Increase:    $4,140,058.75

Examiner and I have discussed the reserve increase at length and rationale is provided below.

The ██████ increase is a significant factor here.

RE: Excess: Per the email below, we do not require excess approval.

RE: Client approval - not required prior to increase, but per CSI's:
The examiner will send a Reserve Advisory from JURIS - form 29508 - on any reserve change of $50,000 or greater to the WC Consultant.

For reserves changes exceeding $100,000, Tammy Green, Susan Webb and Jennifer DeSmedt should be copied.

From: Burrell,Henry [mailto:Henry.Burrell@cna.com]
Sent: Thursday, March 19, 2015 12:17 PM
To: Fuller, Christy
Subject: RE: ████████████████████

Christy, Reserves don't need approval. Reserve away at your as you wish. Just let me know what you put up.

Thanks.

BB

Date: 11/22/2019  8:08am          User: bvansick                    Page: 217
================================================================================
Claim Number : ███████████                          Date Loss : 09/29/1997
Client     : 2252      - Providence Health & Services
Account    : 530       - PROV ST VINCENT MEDICAL CTR
Unit       : 83700     - 83700 - PATIENT TRANSPORTATION
Claimant   : █████████████████

# EXHIBIT E



**PO Box 8317  Chicago  IL  60680-8317**

March 17, 2017

*Eric Winn*
*Claim Consultant*
*Telephone503-431-3069*
*Facsimile  312-894-3555*
*Internet    eric.winn@cna.com*

Attn: Delmi Manzanares
Providence Health Services
Workers' Compensation Consultant – Oregon Region
Injury Management & Compliance
Delmi.Manzanares@providence.org

Policy #: W-1028574507
Claim No: ▮▮▮▮▮▮
Our file #:  EP000900
Employee:▮▮▮▮▮▮▮
Date of Loss:  09/29/1997

### Notice of nonpayment, offset, reimbursement and reservation of rights

Dear Delmi Manzanares,

This will acknowledge our receipt of your invoices dated 02/07/2017 and 3/7/2017 (collectively, the "Invoices.") for the above-referenced claim.

Based on the information set forth in greater detail below, Continental Casualty Company ("CCC") has determined that Providence overpaid approximately $1,568,107.51 (the "Overpayment") for the services provided by▮▮▮▮▮ Centers of Oregon (the "Provider").  As a result, CCC has overpaid Providence's previous reimbursement requests in this amount.

Accordingly, CCC will offset current and future reimbursement requests against the Overpayment, and reserves the right to request reimbursement for the noted and future discovered overpayment.

As an initial matter, CCC cannot reimburse Providence Health Systems.  Going forward, CCC will continue to offset future reimbursement requests until such offsets (alone, or in tandem with other measures) recoup the Overpayment.

In this regard, CCC reserves its rights to raise all claims and defenses, and to preserve all terms and conditions under the applicable policies.

We have relied on the following documents in providing this letter, and we enclose copies of these materials for your reference:

1. Bill review created by Exam Works Review Services, dated February 22, 2017;

2. Analytical letter of Exam Works Review Services, dated February 24, 2017; and

3. Discount letter from Sedgwick CMS to Innovative ███████ Systems, dated August 31, 2010.

Together, these materials reveal four problems with the relationship between Providence, its claims administrator (Sedgwick), and the service provider, ███████ Centers of Oregon.

We strongly encourage Providence to investigate these problems, and to obtain appropriate counsel to seek resolution of the issues they create.

**Overcharging for Aranesp**

The first problem arises from charges for the medication Aranesp, which the Provider dispensed to treat ███████ anemia. The Provider billed dosages under a HCPCS drug quantity noted in microrgams (mcg). One thousand micrograms constitute one milligram.

Aranesp is dispensed in vials that are dosed as micrograms per milliliter (mcg/ml). The Provider's billing entries under National Drug Code conventions do not assist with translating the microgram dosages into a fluid equivalent. Much worse, the provider has charged Providence a cost per microgram that is magnitudes greater than the allowable charge.

To illustrate, please refer to Exam Works' February 24, 2017 letter and its example of the May 20, 2015 services which the Provider billed. At this May 20th treatment, the Provider dispensed 10 mcg of Aranesp to ███████ The Provider should have charged Providence $73.09 for that dose. Instead, the Provider charged Providence $1,840.00. That charge is 25 times more than the permissible charge for the medication.

These Aranesp overcharges are repeatedly revealed throughout Exam Works' study period of May 2015 to May 2016. We have created and enclosed a chart that extracts the Aranesp overcharges throughout the study period, as these overcharges represent the single greatest overcharged service within the Provider's course of treatment.

The Aranesp overcharges resulted in Providence overpaying $1,005,293.42 for this drug (before discounts, which are further discussed below).

There are other overcharges evident within Exam Works' bill review; and in total, the Provider appears to overcharged Providence a total of $1,568,107.51 in the 1-year study period.

As CCC has reimbursed Providence for these overcharges, those sums reflect CCC's offset. CCC reserves the right to augment its offset if its analysis reveals additional overcharges, as well as request reimbursement for additional overcharges that may be found.

Providence's other three relationship problems also impair CCC's ability to reimburse Providence under the contract. The next such problem is that Sedgwick appears to have improperly discounted the Provider's billing. Under OAR 436-009-0018(2)(c), providers may only offer insurers a discount of 10% or less. However, as the Provider's discount letter makes clear, the Provider agreed to a 19% discount with Sedgwick. That exceeds the maximum discount allowed under Oregon law. CCC cannot recognize an unlawful discount agreement.

**Lack of Bill Review and Improper Discount**

Second, Sedgwick avoided the cost of reviews of bills for services charged to Providence by instead relying on an impermissible flat discount arrangement from the Provider. We are concerned that Providence is not receiving adequate services from either its service company or service providers in the ████ case (especially when the discount Sedgwick negotiated with the Provider appears not to be in compliance with Oregon workers compensation statutes and administrative rules).

**Charges in Excess of Fee Tables**

Finally, as discussed above, the Provider's charges to Providence exceed amounts allowed under appropriate workers compensation fee tables. Please refer to the tables within the appendices to OAR Chapter 436, Division 009, for reference.

**Further Recommendations**

We strongly recommend Providence retain counsel to assist in stopping and perhaps recovering overpayments. To this end, we note that OAR 436-009-0008 (2)(e) gives insurers 180 days to request refunds from service providers. The rule also allows Director review of overpayments upon request. Counsel may be able to assist Providence with other routes to recovery. This case and the overpayments have been discussed with Matthew Fischer, attorney with Reinisch, Wilson, Weier, PC, who we believe is Providence's primary Worker's Compensation Firm. Mr. Fischer can quickly be on-boarded to this issue to attempt to obtain any appropriate review necessary. To the extent such recovery is directed toward CCC, we will certainly collaborate with Providence to reduce overcharges by amounts that are fair and equitable.

As for Providence's excess policy, as stated above, CCC will rely on the policy, and reserves all of its rights. These include, but are not limited to, the right to be informed regarding the relationship with ████ Centers of Oregon and to liaise with Providence as Providence undertakes its own investigation. CCC also requires Providence to administer its claims in accordance with state law and will require Providence to correct all deficient claim administration practices, such as the Provider/Sedgwick/Providence relationship mentioned above. Please also forward the complete billings between Provider and Providence for the period between 2010 when the discount agreement was put into place and the present time.

Please note that CCC has retained coverage counsel to assist it with recouping sums overpaid as discussed in this letter. If you retain counsel in this matter please invite your attorney to contact our coverage counsel, and to include them in all future correspondence. I have supplied their contact information below.

Sincerely,

Eric Winn

Cc: Catherine Shaw, Sedgwick Claim Management Solutions

George H. Guyer, Attorney as CCC coverage counsel
Guyer Law
5895 Jean Road
Lake Oswego, OR 97035
(503) 697-1035